HOBSON, Justice.
These, two cases were consolidated for trial below, and arise out of an automobile accident in which William Shearn was fatally injured.
Mary Shearn, as widow of William Shearn, sued Orlando Funeral Home, Inc., and obtained judgment on a verdict for $18,000. From thist judgment, Orlando Funeral Home, Inc., appeals. This case is styled Orlando Funeral Home, Inc. v. Shearn.
• In the companion case, Mary Shearn, as executrix under the will of William Shearn, sued the same defendant and obtained a verdict for $3,000. The trjal judge entered an order granting defendant’s motion for new trial unless plaintiff entered a remit-titur of $2,500, which she declined to do. She appeals from the order granting the motion for new trial. This case is styled Shearn v. Orlando Funeral Home, Inc.
The essential facts out of which the litigation arose are the following:
Colonial Drive is a four lane street within the city of Orlando, running east and west. It is intersected at right angles by Bumby Street,. a two lane street, and there is a traffic light at this intersection. Decedent, with his wife, plaintiff below, as a passenger, was driving his Chevrolet automobile in a westerly direction on Colonial Drive at about noon on a clear, dry day. He stopped for a red light at the Bumby intersection in the lane nearest the center line of the street. A westbound Kaiser automobile stopped to his right, in the outside lane. Decedent had put out his hand to indicate a left turn into Bumby Street as he approached the intersection) but dropped it as a signal to stop, since the light was red. When the light turned green, decedent commenced a left turn. On conflicting evidence, the jury could have found that decedent had again raised his hand to indicate this left: turn. ''
An ambulance belonging to Orlando Funeral Home was travelling West on Colonial Drive, transporting an unconscious: patient to the hospital; As - the ambulance approached the intersection at a high rate of speed, passing cars between it and the decedent’s car, it swerved to the left, across the center line of Colonial Drive and into the eastbound lane. The driver saw the car of the decedent stopped at the red signal. The signal turned green when the ambulance was 100 to 150 feet from the intersection. The ambulance struck decedent’s automobile on the left side, as the latter was turning toward the left. The ambulance driver testified that he was 150 feet or less away from decedent’s car when decedent commenced his left turn. Other estimates of this distance varied to as little as 75 feet.
Evidence of the speed of the' ambulance is conflicting. ' Mrs;,Spratt, an aunt of -the patient in the ambulance, testified that she was riding, in the ambulance in a position from which she could see the speedometer. She watched the speedometer almost constantly, because she was frightened at the speed of the ambulance. She testified unequivocally that this instrument indicated a speed of between .85 and 90 miles per hour while the ambulance passed the line of cars coming up ’on-the intersection, and up to the time' she covered her face and ducked, which was “right at the intersection.” On cross-examination, when asked where the speedometer needle was when it indicated a speed of 85, this witness testified she believed.it was approximately straight up and down, but she was not certain of this because she had “been in too many vehicles since then.”
The witness Higganbotham was driving his car west on Colonial Drive and testified that the ambulance passed-him while he was approximately 800 ■ feet east - of the Bumby Street intersection.- He estimated the speed of the ambulance to have been about 65 or 70 at the time of passing. Other witnesses fixed the speed at 70 :or more. The ambulance driver testified that his speed had been as high as "70,, but said that it was reduced- to 60 or 55 as he reached Bumby . Street, the .scene of the collision. . .
*868 The ambulance was sounding its siren as it proceeded down Colonial Drive. Various witnesses testified to hearing it. But the witness Higganbotham, whose car was overtaken by the ambulance, testified that “the time I heard the warning he was already going by me and I made no attempt to pull over to the' right again because he was already going by me by the time I got the signal ’clear.”- After the light turned green, the Kaiser automobile which had been on decedent’s right proceeded straight across the intersection. Miss Bel-fleur, a passenger in the Kaiser, testified that she had not heard the siren until just after the Kaiser had passed the Bumby intersection.
In Orlando Funeral Home, -Inc. v. Shearn, the jury was fully charged on the subjects of negligence and contributory negligence. Two ordinances of the city of Orlando were admitted in evidence. One of these ordinances places a maximum speed limit of 35 miles per hour on any emergency vehicle, with certain exceptions not relevant here. In the charge to the jury, the trial court omitted certain portions of these ordinances. The only omitted portion which could possibly have any significance is one which provides that on the approach- of an' emergency vehicle sounding a siren the driver of every other vehicle shall pull to the curb and stop. Appellant contends that failure to read this portion of the ordinance was error, but we are of the view that under the undisputed physical facts of this case the trial judge was authorized to conclude, as he apparently did, that the subject was academic. Because of the presence of the Kaiser automobile on his right, the decedent had no opportunity to pull over to the curb, and other portions of the charge given to the jury clearly indicated the der cedent’s duty in the premises.
Appellant seeks to raise other questions’regarding the propriety of the court’s charge to the jury, but we find no merit in them. Appellant concedes in its brief, and we agree, that the sufficiency of the evidence to support any verdict for the plaintiff, or the particular verdict rendered, is the primary question raised upon this appeal. With due regard for the fact that the jury was permitted to view the premises, and with the abundant evidence supplied by eyewitnesses, the jury could properly have concluded that, although the decedent heard the sound of the siren, the terrific speed of the ambulance and its sudden presence on the wrong side of a four lane street in the city in the middle of the day constituted negligence which proximately caused the accident. The jury could further have concluded, on the issue of contributory negligence,' that the speed of the ambulance did not allow the decedent normal human reaction time to take any steps whatever to avoid the collision.
The plaintiff testified that the decedent said to her just as he. started his turn, “Dear, I think something is going to hit us”, and that these were the last words she ever heard him say. At that time his car had already been placed in motion. The jury could have concluded that the accident occurred a split second thereafter and that, as the witness Higganbotham testified, “He couldn’t have got out of the way to save hi-s life * * On this record the jury did not err in rejecting the defense of contributory negligence;
On the issue of damages, appellant contends that it was error to admit in evidence certain Federal withholding certificates showing his earnings in an employment from which he had apparently retired. From other evidence on the issue of damages, however, it appears that the admission of these certificates, if error, was harmless when considered with the other elements proved and the amount of the verdict. The judgment in this case is affirmed.
In Shearn v. Orlando Funeral Home, Inc., appellant, plaintiff below, contends that the verdict of $3,000, was not excessive and that the trial court therefore erred in ordering the plaintiff to enter a remittitur of $2,500. It will be recalled that in. this case damages were sought *869 to be recovered by the plaintiff in her capacity as executrix of her husband’s estate. The damages proved were limited to the mental anguish, pain and suffering of the decedent during the four-and one half days which he lived after the accident.
The record shows that after the accident' the decedent was lying on the seat o-f 'his car groaning and complaining of his chest. X-rays at the hospital revealed that seven ribs were broken, as well as the left clavicle. He had various severe lacerations, arid a bruise of the left chest. Air was escaping into the pleural cavity. One lung had apparently collapsed. - When the decedent was brought into the emergency room of the hospital on a stretcher, he was conscious and appeared to be in great distress. He had an extreme tenderness over his left chest wall. At the hospital he was in a marked state of respiratory distress, gasping for air. Ultimately ■. an oxygen mask was used. Part of the time he was irrational, but the record contains medical, testimony to the effect that he was able to respond to questions and discuss his feelings up to the time of his death. Dr. Moody testified that “he was never clear as to the accident, as to the exact happenings at the time of the accident, but he was clear enough to discuss rationally about the way he felt, and the amount of breathing or the amount of shortness of breath he had or the amount of coughing; in other words, his conversation he carried on rationally.” A catheter had been inserted in his chest. He was fed intravenously. He was .confused and apprehensive because he was suffering from the lack of oxygen and had great difficulty in breathing.
Mr. Sheam was 60 years old at the time of his death. Until the accident he had been in excellent health. We do not consider excessive the verdict of $3,000 for the mental anguish, pain and suffering which this record demonstrates. There is no showing that the jury was swayed by passion or prejudice, and as a matter of law there was no reason to reduce the verdict to $500. In Higbee v. Dorigo, Fla., 66 So.2d 684, 686, we said:
“[T]he question of damages is one lodged in the sound discretion of the jury within reasonable bounds, and the findings of a jury in respect to damages -will not be disturbed by this Court unless it plainly appears that the verdict was induced by prejudice or passion or some misconception of the law or evidence, or that the jury failed to consider all the elements of the damages involved or the issues submitted. Bulmer v. Strawn, Fla., 53 So.2d 315; Radiant Oil Co. v. Herring, 146 Fla. 154, 200 So. 376.”
We can find no logical basis for reducing by $2,500 the amount of the verdict in this case. Accordingly, the judgment appealed from must. be, and it is hereby, reversed with directions to enter judgment on the original verdict.
DREW, C. J., and THOMAS and THORNAL, JJ., concur.